### CHADDERDON *v.* MAXWELL.

MECHANICS' LIENS—APPEAL AND ERROR.

Giving to the findings of fact made by the trial court the benefit of the presumption arising from the fact that he heard the testimony and saw the witnesses, and, in this instance, viewed the premises, the judgment in a suit to enforce a mechanics' lien, denying defendant's claim of recoupment, is affirmed.

Appeal from Allegan; Padgham, J.   Submitted November 13, 1912.   (Docket No. 62.)   Decided May 29, 1913.

Bill by Ira Chadderdon and another against Jonathan D. Maxwell to foreclose a mechanics' lien.   Defendant claimed recoupment for defective work and filed a cross-bill.   From a decree for complainants, defendant appeals.   Affirmed.

*Charles Thew,* for complainants.

*O. S. Cross,* for defendant.

McAlvay, J. The bill of complaint in this case was filed by complainants for the purpose of foreclosing a mechanics' lien for a balance claimed to be due them from defendant, for furnishing all the material and performing all the labor in erecting and constructing a certain barn for defendant, upon his farm in the township of Trowbridge, Allegan county, Mich., under a certain written contract between the parties, for a stated price of $2,800 and extras; also to reform a claimed mutual mistake in one clause of said contract relative to a litter carrier. Defendant answered the bill of complaint, including in his answer allegations in the nature of a cross-bill, praying for affirmative relief by reason of the nonfulfillment of the contract on the part of complainants. Issue was joined, and the case was heard upon proofs taken in open court. At the conclusion of the case it was stipulated between the parties that the trial judge should view the premises and building involved in this case. According to this stipulation the judge went twice to the premises and examined the barn, that, as he says, he "might understand and apply the testimony given in the case." After such inspections and examinations the trial judge made the following written findings:

"Complainants file this bill to foreclose a lien on certain lands owned by defendant, and upon which lands complainants built a barn in accordance with a contract entered into between the parties some time in June, 1910.

"The defendant has always been a resident of the State of New York, and at the time of the making of said contract, defendant's brother, W. E. Maxwell, acted as his agent in making the contract, and who has resided on and operated the farm as agent of his brother, the defendant, during the time of the construction of said barn. At the time of the execution of the said contract there were also plans and specifications accompanying the same, and made (part) thereof. The contract, in substance, provided that the

complainants should build a barn of certain dimensions for the agreed price of $2,800, they to furnish all the materials therefor, including lumber, cement, and the hardware, and to complete the same on or before the 1st day of August, 1910; the said barn to be built on the land described as follows: The west one-half (W. ½) of the southeast quarter (S. E. ¼) of section one (1) in the township of Trowbridge, in the county of Allegan. The said contract further provided, in substance, that when the lumber should arrive in the car it should be inspected by first party (via the defendant), and if satisfactory, the bill of lading being accompanied with a draft for the amount of the lumber, said first party should pay the same and the amount thereof credited as first payment on the contract. It was further provided that when the barn was inclosed, sided, and roof on, first party should pay the'difference between $2,000 and the amount of said draft, the balance of $800 to be paid when the barn was completed. It was further provided that if the first party desired to make or require alterations in the plans and specifications at any time during the progress of the work, it might be done without annulling or invalidating the contract, and the cost of such alterations should be added or taken from the amount of the contract price, as the case might be. Soon after the making of the contract the parties of the second part began work on the said barn. The agreed price under the contract was $2,800; parties of the second part to furnish all the material and do all the work.

"Defendant by his agent, in the answer filed to this bill, finds much fault with the manner in doing the work, and because the job was not completed by the 1st of August as per contract. It appears in the proofs, but not in the contract, that this barn was to be built upon a foundation that would come on the spot where an old barn then stood, and which was to be removed by first party to enable the second parties to place the foundation wall of the new barn. This old barn was not entirely removed in time for the new wall to be built at one time, and on that account the new wall, or part of it, had to be finished later, after the old barn had been entirely removed. This fact caused

some delay, and in July the defendant put in some hay in the barn while the carpenters were at work, causing some delay, in all from six to ten days, which was not the fault of the complainants.

"Defendant, by his said agent, claims that the cement floors are defective and not properly put in, and that they are hollow in places and cracked some, and the approaches are not made with proper cement, and crumble and break when traveled over by horses and wagons, etc. The proofs show that, after the grout work was in and dry, the defendant dug a trench through part of it and laid water pipes in the trench, and when this was done it sounded hollow under it.

"This may be the cause of it. It further appeared in the proofs that after the cement work was finished the defendant's cattle got in and trampled over it, which defendant fixed himself, and laid no blame to complainants for that.

"It also appears by the proof in the case that the complainants were annoyed while building the cement wall by defendant's cattle tearing down the lines and trampling over the wall, breaking it in places, which may account for the rough appearance in the wall which defendant complains of.

"Much fault is found by defendant about the carpenter work, in the use of short pieces in the foundation sill, and those pieces used in siding the stalls, the doors not properly fitted, and nails not clinched; the ladders in the hayloft too short and not reaching down to the floor. These are some of the defects in the carpenter work which defendant claims is not done in a workmanlike manner. Testimony went fully into all these matters in detail, upon the hearing.

"The contract, plans and specifications, originally drawn for this building, were departed from and not followed to any great extent, but changes were made to suit the defendant as the work progressed. The plans at first provided for a door in the end of the barn, through which the hay was to be put in. This was changed at the request of the defendant, and a space over the barn floor 12x24 feet was to be used for the purpose of filling the barn with hay at that place instead of the door above mentioned. The plans also provided for stairs to reach the hayloft. This

part was abandoned at the request of the defendant, and a cupboard built in the space for the stairs, and many other changes were made as the work went along.

"The defendant's agent, W. E. Maxwell, lived on the farm and was every day present and saw what was being done, and made such changes and suggestions as he saw fit. He had built barns himself before, and had worked more or less in cement work. The proofs show that while the work was being done he found no fault with the manner in which it was done, and insisted on doing some of it himself. It also appears in evidence that on two or three occasions he expressed himself as being satisfied with the work, even up to the time when the job was completed. It was claimed by the defendant that two litter carriers were to be placed in the barn, and that the contract called for two. The complainants, on the other hand, claim that one only was provided for in the contract, and that by mistake the wording of the contract is ambiguous. As written in the contract, this wording is as follows: 'One Lowden litter carrier to run behind the single stalls and one outside of the barn for the box stalls.' The complainants in their bill asked to have the contract reformed in this particular, that it may read as per the agreement at the time the agreement was entered into. Complainants contend that one litter carrier only was to be put in the barn; that by mistake the word 'one' was written instead of the word 'on.' The wording would then read as follows: 'One Lowden litter carrier to run behind the single stalls and on the outside of the barn for the box stalls.' Testimony was given on this point, and I am satisfied by the proofs that the latter reading is correct, and the contract should be reformed as prayed in the bill. Inasmuch as the litter carrier track is running behind the single stalls (inside) and runs outside past the doors of the box stalls, which open outside, it would seem the intention was to reach all the stalls by one litter carrier. No provision was made for the building of another on the outside, either in the plans or specifications.

"Complainants make a claim for certain extras over and above the written contract. The proofs show that

some extra work was done at the request of the defendant. A bill of particulars of these items was filed and proofs taken on the hearing as to these matters, some of which I think should be allowed, viz.:

| | |
|---|---:|
| Building the cupboard, 1 day's work.. | $3 00 |
| Nailing screen on cupola, ½ day's work | 1 50 |
| Extra barn door, work and material.. | 5 00 |
| Extra ceiling, siding of stalls, work... | 3 00 |
| 457 feet of ceiling for the same........ | 11 27 |

"The approaches to the barn were first built with grooves for doors to run in. At defendant's request this part of the cement work was removed after it was set, and finished over, so that doors closed over the approach, instead of running in the grooves at the bottom. For this change it took:

| | |
|---|---:|
| Two barrels of cement................ | 3 00 |
| Two loads of gravel.................. | 1 50 |
| Labor ............................. | 1 75 |

"The defendant agreed to deliver on the ground, for the foundation wall, 20 loads of stone, but delivered only 16 loads, which necessitated the use of:

| | |
|---|---:|
| Cement to make up the lack of the 4 loads, estimated at .................. | 5 00 |
| Labor and extras, total................ | $36 02 |
| Extra pieces stuff, 72 pieces in all, as per bill particulars................. | 20 26 |
| Making a total for extra material and labor of .......................... | $56 28 |
| The amount claimed to be due when this lien was filed, as per lien........ | $884 62 |
| Defendant has paid to labor and for materials since the suit was begun.. | $437 88 |
| Defendant should also be allowed for painting windows at the end of barn. | 1 60 |
| Litter carrier track on outside of barn, not painted ....................... | 2 50 |
| Fixing the doors, clinching nails, bottoms, tongue, and gravel........... | 2 50 |

Making a total credit in behalf of de-
fendant since suit began of.................. $444 48

Deducting this amount from the sum
of $884.62, leaves a balance due on
the work and material for the barn of........ $440 14

"Complainants were entitled to the pieces of lumber left over at the completion of the building, and when taking them defendant forbid them taking such pieces, and claiming to be entitled to them. These pieces of odds and ends were valued at (estimated) $5. Adding this to the above $440.14 makes the sum of $445.14 which amount the said complainants are entitled to receive from the defendant, and for which sum complainants are entitled to their said lien on the premises hereinafter described, and to a decree foreclosing the same, with interest at the rate of 5 per cent. on the original amount of $884.62 from the 26th day of August, 1910, to the 16th day of September, 1911, and from that date to the present time, interest at 5 per cent. on the amount due, to wit, $445.14.

"At the close of taking the proofs in this case in open court, the counsel for both parties requested that I should visit the premises and said barn personally and look it over. I have done so, and have been to look the barn over twice, that I might understand and apply the testimony given in the case.

"A decree may be prepared in accordance with this finding for signature. Complainants will be entitled to costs to be taxed."

A decree was granted in accordance therewith in favor of complainants and duly entered.

Defendant has appealed to this court for a reversal of this decree, on the ground that the evidence in the case conclusively shows that all of the defects claimed by him in the construction of this barn exist, and that it was not constructed in a workmanlike manner.

The questions involved in the case are questions of fact. The record is quite voluminous, and we are satisfied from a careful examination that the findings of the trial judge are warranted by the evidence. We have given these findings in full for the reason that

they present in detail the contentions of the parties, and are the result of the great care and deliberation exercised by the trial judge, who saw and heard all the witnesses and made two inspections of the building, and was therefore much better able than this court, in a case of this character, to understand and apply the testimony. To go over this record and give in detail a digest of the evidence would be of no benefit to the profession and would result in a repetition of the findings of that court.

The decree of the circuit court is affirmed, with costs to complainants.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.